#23707

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. _____

| | |
|---|---|
| Christine Ruark,<br><br>       Plaintiff<br><br>v.<br><br>Liberty Life Assurance Company of Boston<br>and Massachusetts Mutual Life<br>Insurance Company,<br><br>       Defendants | 04-30013-MAP<br><br>COMPLAINT<br><br>FILING FEE PAID:<br>RECEIPT # 305484<br>AMOUNT $ 150.00<br>BY DPTY CLK _____<br>DATE 1/22/04 |

## INTRODUCTION

1. Plaintiff, Christine Ruark, brings this action against the Defendant, Liberty Life Assurance Company of Boston ("Liberty") and Massachusetts Mutual Life Insurance Company ("Mass. Mutual), for violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA"). Plaintiff is a participant in an ERISA welfare benefit plan established by, and initially administered, by Mass. Mutual, effective January 1, 1991, and later administered by Liberty. The name of the plan is the Mass. Mutual Long Term Disability Plan ("Plan"). This Complaint challenges the Defendants' unlawful termination of Plaintiff's long-term disability ("LTD") benefits under the Plan without appropriate justification and without granting her a full and fair review of her claim for continued benefits. Specifically, Plaintiff is filing this action to recover benefits due to her under the terms of the Plan, to enforce

her rights under the terms of the Plan, to clarify her rights to future benefits under the terms of the Plan, and to recover costs and attorney's fees as provided by ERISA.

## JURISDICTION

2. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132 (e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Defendants' breach of their ERISA obligations took place in this district and both Defendants reside or may be found in this district.

## PARTIES

3. The Plaintiff is a 54 year old individual (d.o.b. 6/7/49) who resides at 7 Briarcliff Road, Longmeadow, Massachusetts. Plaintiff is a vested participant in an employee benefit plan within the meaning of 29 U.S.C. § 1002 (2)(7). Plaintiff has standing to bring this action under 29 U.S.C. § 1132 (a).

4. The Defendant, Mass. Mutual, is a for-profit corporation with its principal place of business at 1295 State Street, Springfield, Massachusetts. Mass. Mutual established, effective January 1, 1991, and initially administered, the Plan.

5. The Defendant, Liberty, is a for-profit corporation with a usual place of business at 175 Dwight Road, Longmeadow, Massachusetts. Effective January 1, 2000, Mass. Mutual contracted with Liberty to administer the Plan. Since January 1, 2000, and continuing to the present, Liberty has been and still is the party responsible for processing claims made under the Plan and making a final determination as to the Plan participants' eligibility and continued eligibility for LTD benefits.

## STATEMENT OF FACTS

INSURANCE ENTITLEMENT:

6. Effective January 1, 1991, Ms. Ruark was issued the Plan by Mass. Mutual while employed at Mass. Mutual in Springfield, Massachusetts. She was immediately deemed a Plan Member as provided in said Plan.

7. Ms. Ruark was employed at Mass. Mutual from on or about October 19, 1987, to on or about April 12, 1993. She began her employment as a Fund Accountant, was promoted to Assistant Auditor in April, 1989, was then promoted to Operations Administer on August 1, 1990, and was again promoted to Senior Financial Analyst on March 1, 1991. Her duties as a Senior Financial Analyst included: providing administrative staff support to the Head of Operations Support Department and Head of Financial Services by exercising procedural and administrative control of, and conducting, the division's budget, cost accounting, EEO/Affirmative Action Plans, Salary and Personnel Administration, Field Office Imprest Funds and secretarial training and assignments; administering and monitoring of all inter- and intra - division action programs; executing special projects and developing salary and capital budgets as required; and coordination and ongoing administration of all Value Analyses performed in the Division.

8. The Plan does not grant the Defendants discretionary authority:

   a. to determine eligibility for benefits;

   b. to cease monthly disability benefits; or

   c. to interpret the terms of the Plan.

9. The Plan provides for the payment of LTD benefits when a Plan Member becomes totally disabled. The Plan provides in Part IV – Benefits, Section 1. Entitlement to Benefits, that a Plan Member is deemed totally disabled when it is shown:

... that for the first two years of total disability, beginning with the first day of absence from work caused by the disabling condition, is unable to perform substantially all of the duties of his or her usual occupation, and thereafter from performing any work or engaging in any business or occupation for compensation or profit,....

10. The Plan provides in Part VI – Claim Procedures, Section 2. Approval of Claim, that:

After the appropriate waiting period expires, the Plan Member will be deemed to be disabled under this Plan when the Plan Member is determined by the Long Term Disability Committee to be entitled to receive benefits under the Long Term Disability Plan. The Plan Member will continue to be considered disabled, for purposes of this Plan, until the Long Term Disability Committee determines that the Plan Member is no longer entitled to receive benefits.

11. The Plan provides in Part VI – Claim Procedures, Section 3. Proof of Continuing Disability, in relevant part that:

If the Plan Member...(3) become able to perform any work or engage in any business or occupation for compensation or profit, other than that deemed rehabilitative as provided hereinabove, monthly disability benefits provided hereunder shall immediately cease.

The cessation of monthly disability benefits shall be deemed to have been in accordance with the provisions of this Plan and not within the discretion of the Plan Administrator.

12. Under the Plan, benefits are payable until the insured is no longer totally disabled, or until the date he/she becomes eligible for retirement under Mass Mutual's

Pension Plan (age 65), whichever occurs first. During receipt of LTD benefits, Pension Plan serving time continues to accrue.

13. Except for the explanation of "totally disabled" quoted above in this Complaint, the Plan contains no other definition or explanation of this term.

EDUCATION/WORK HISTORY:

14. Plaintiff is a 1967 graduate of Ludlow High School, in Ludlow, Massachusetts, with a business major. While working fulltime and going to college part time, she received the degree of Bachelor of Science in Business Administration, cum laude, on May 17, 1987, in Accounting from Western New England College in Springfield, Massachusetts.

15. Plaintiff was employed at Smith & Wesson from on or about 1977 to on or about 1985 as an executive secretary, junior financial clerk, and accounts receivable clerk. She was then employed at Ampad Corporation from on or about March 17, 1986, to on or about October 1, 1987, as a junior accountant and then as a general accountant.

ONSET OF DISABILITY/INITIAL AND CONTINUED LTD BENEFITS:

16. Beginning on or about 1990, Plaintiff developed numerous physical and mental conditions, including, but not limited to, Chronic Fatigue Syndrome ("CFS"), which can involve Epstein Barr Virus, atypical (nonepileptic) seizures, hypothyroidism, fibromyalgia, migraine headaches, high prolactin level, chronic asthma, allergic rhinitis, gastritis, irritable bowel syndrome, early menopause, GERD reflux disease, and dementia/cognitive impairment.

17. By letter dated December 6, 1993, Mass. Mutual notified Plaintiff that her application for LTD benefits had been approved, effective October 21, 1993, the date her short-term disability benefits were exhausted. Her monthly LTD benefits of $2,102.28 commenced as of October 21, 1993.

18. By letter dated March 5, 1995, Plaintiff was awarded Social Security disability benefits as of April 12, 1993, her last day of work. After the required five (5) month waiting period, she began receiving monthly disability benefit payments retroactive to October, 1993.

19. By letter dated February 9, 1998, Plaintiff was notified by Mass. Mutual that, after review of her status, her LTD benefits were being continued.

20. By letter dated November 12, 1998, Plaintiff was notified by the Social Security Administration that, after recent review of the evidence in her Social Security disability claim, it was found that her disability was continuing.

21. By letter dated January 27, 1999, Mass. Mutual notified Plaintiff to provide proof of her continued disability. After the Plaintiff provided such proof, Mass. Mutual approved continuation of her LTD benefits.

TERMINATION OF LTD BENEFITS:

22. By letter dated June 26, 2000, Plaintiff was notified by Liberty that her continued eligibility for LTD benefits was being reviewed. Plaintiff and her physicians were requested to provide certain medical information.

23. Liberty received medical documentation regarding the Plaintiff's various medical conditions.

24. From December 6, 1993, to January 25, 2001, the Plaintiff's medical condition had not improved, and her inability to work had not changed, so as to justify the termination of her LTD benefits.

25. By letter dated January 25, 2001, received by the Plaintiff on or about January 29, 2001, the Plaintiff was notified by Liberty that her LTD benefits were denied as of February 1, 2001, because she allegedly did not meet the totally disabled requirements of the Plan. Liberty's denial letter refers to, and appears to be based upon, a records review report

dated January 3, 2001, of Naomi Waldbaum, M.D., a physiatrist. Both Dr. Waldbaum and Liberty maintained that the medical information did not support any restrictions or limitations that would preclude Plaintiff from performing the duties of her usual or any occupation.

26. By letter to Liberty dated February 22, 2001, the Plaintiff, in addition to requesting certain information, stated that Liberty's representation in its January 25, 2001, denial letter that Liberty had previously sent Dr. Waldbaum's report by facsimile to Richard Seiler, M.D., Plaintiff's primary care physician, for his review and comment if he did not agree with it was erroneous and that Dr. Seiler maintained that he had never received Dr. Waldbaum's report. The February 22, 2001, letter also requested Liberty to rescind its termination of LTD benefits to Plaintiff and reopen her case to receive a response from Dr. Seiler and additional information regarding Plaintiff's disability.

27. By letter to Plaintiff dated February 26, 2001, Liberty acknowledged receipt of Plaintiff's "request for review of the recent claims determination" and stated that Plaintiff's file had been forwarded to Liberty's Appeal Review Unit.

28. By letter to Liberty dated February 28, 2001, Plaintiff stated, <u>inter alia</u>, that her February 22, 2001, letter to Liberty was not an appeal and that a timely appeal would be forthcoming and that Liberty's February 26, 2001, letter failed to respond to Plaintiff's request that the termination of Plaintiff's LTD benefits be rescinded and that her case be reopened to allow Dr. Seiler to respond to Dr. Waldbaum's report and for Plaintiff to provide additional information.

29. By letter to Plaintiff dated March 14, 2001, Liberty rejected Plaintiff's request that Liberty rescind the termination of her LTD benefits and reopen her case. Liberty stated that Plaintiff's file would remain at the Appeal Review Unit but that the appeal review would not begin until Plaintiff filed a timely formal appeal.

30. By letter to Liberty dated March 23, 2001, the Plaintiff submitted her formal appeal of Liberty's denial of her LTD benefits as of February 1, 2001, along with additional medical and vocational information. One item was a report dated March 5, 2001, from Dr. Seiler responding to, and challenging, Dr. Waldbaum's report. Dr. Seiler concluded that Plaintiff was still totally disabled from working. Another item was a report by Anthony H. Jackson, M.D. of Baystate Medical Center's Sleep Disorders Laboratory which contained diagnostic classifications of primary snoring, severe, chronic; possible obstructive sleep apnea syndrome; polysomnogram; headaches; and chronic fatigue syndrome. Another item of information was a 25 page narrative report dated March 22, 2001, from David Soja, CRC/LRC, ABVE, a Vocational Consultant who is used extensively by the Social Security Administration, Office of Hearings and Appeals, in disability cases, in which Dr. Soja concluded that, not only was Plaintiff unemployable in, and unable to perform any of the skilled duties of, her usual and customary occupation or in any of her past relevant work, but she was also "100% UNEMPLOYABLE to perform any other work in the local or national economy or engaging in any occupation for compensation or profit based on the vocational factors detailed throughout this report." Plaintiff further informed Liberty in her appeal letter that she would be submitting additional medical and/or psychological information which she had not yet been able to obtain due to the unavailability of providers and/or her ongoing treatment and deteriorating condition. Plaintiff also stated in her appeal letter that no showing had been made, and she was not aware, that the Long Term Disability Committee had made a determination that she was no longer entitled to receive benefits.

31. By letter dated May 16, 2001, to Liberty, Plaintiff submitted additional medical information which, <u>inter alia</u>, contained diagnoses of encephalopathy, primary hypothyroidism, idiopathic hyperprolactinemia with associated galacarrhea, and exposure to

Epstein-Barr virus. Plaintiff also represented that she would be submitting additional information.

32. By letter dated August 14, 2001, to Liberty, Plaintiff submitted additional medical information which, inter alia, contained a diagnosis of chronic fatigue syndrome, deterioration noted in a recent neuropsychological evaluation compared to previous evaluations, and Plaintiff's performing in the mildly clinical range of depression. Plaintiff again represented she would be submitting additional medical information.

33. By letter dated October 12, 2001, Liberty notified Plaintiff that, upon review of Plaintiff's request for reconsideration of the termination of her LTD benefits, Liberty was not altering its original determination to deny Plaintiff LTD benefits beyond January 31, 2001, would no longer allow Plaintiff to submit additional medical information, and had "rendered our final determination of this claim and will now close our file."

34. By letter dated October 15, 2001, to Liberty, Plaintiff, inter alia, protested Liberty's refusal to allow Plaintiff to submit additional medical information and further noted Liberty's failure to address in its October 12, 2001, denial letter the report dated March 22, 2001, of David Soja, the vocational expert and Plaintiff requested Liberty to respond relative thereto, to which Plaintiff never received a response.

35. By letter dated May 14, 2003, to Liberty, Plaintiff submitted additional medical information which included, inter alia, substantiation of severe acromioclavicular arthritis of Plaintiff's right and left shoulders; multi-level disc bulges at L 2-3, L 3-4, and L 4-5 disc levels the disc bulge is eccentric to the left resulting in mild to moderate left lateral recess and mild left neural foraminal narrowing at L 4-5 disc level, moderate-sized bulge at L 4-5 disc level; chronic whole body pain; mood disorder; fibromyalgia; conversion disorder; chronic fatigue syndrome; atypical somatoform disorder; conceivable undergoing of

encephalitic process ten (10) years ago that might have led to an epileptic process which might not be associated with abnormalities on imaging studies, with possible progressive cognitive impairment; adjustment disorder with mixed emotional features, chronic; and dementia, not otherwise specified with features of executive dysfunction r/o conversion disorder. Two (2) of Plaintiff's treating physicians, a Psychiatrist and a Clinical Rheumatologist, both substantiated her total disability.

36. By letter dated September 5, 2003, to Plaintiff, Liberty notified Plaintiff that "no further review will be conducted" by Liberty and that "Her claim will remain closed and no further communication or correspondence will be addressed."

37. Liberty failed/refused to consider the medical information submitted by Plaintiff in her May 14, 2003, letter.

38. When terminating Plaintiff's LTD benefits effective February 1, 2001, Liberty failed to establish that Plaintiff had improved to such a degree that she was no longer totally disabled under the terms of the Plan.

39. Upon information and belief, the Long Term Disability Committee did not determine that the Plaintiff was no longer entitled to receive LTD benefits.

40. When terminating Plaintiff's LTD benefits effective January 1, 2001, Liberty failed to establish that Plaintiff had become able to perform any work or engage in any business or occupation for compensation or profit, other than that deemed rehabilitative as provided in the Plan.

41. The Plaintiff seasonably and properly complied with the Plan's claim review and appeal procedures.

42. The Plaintiff has complied with all procedural requirements and conditions precedent under law and of the Plan necessary to allow Plaintiff to commence this suit.

43. Due to the unlawful termination of benefits effective February 1, 2001, under ERISA, Plaintiff has lost her rightful LTD benefits.

44. Having exhausted the administrative procedures provided by the Defendants, Plaintiff now brings this action.

## CAUSES OF ACTION

### COUNT I

### (ERISA violation v. Liberty)

45. Plaintiff incorporates by reference paragraphs 1. through 44. above and realleges the same as if fully stated herein.

46. Liberty's actions constitute an unlawful denial of benefits under ERISA, under 29 U.S.C. § 1132(a)(1)(B).

### COUNT II

### (ERISA violation v. Mass. Mutual)

47. Plaintiff incorporates by reference paragraphs 1. through 46. above and realleges the same as if fully stated herein.

48. Mass. Mutual's actions constitute an unlawful denial of benefits under ERISA, under 29 U.S.C. § 1132(a)(1)(B).

### COUNT III

### (Attorney's fees and costs v. Liberty)

49. Plaintiff incorporates by reference paragraphs 1. through 48. above and realleges the same as if fully stated herein.

50. Under the Plan applicable to ERISA, Plaintiff deserves to recover from Liberty "a reasonable attorney's fee and costs of action" herein, pursuant to section 502(g)(1) of ERISA under 29 U.S.C. § 1132(g)(1).

## COUNT IV

### (Attorney's fees and costs v. Mass. Mutual)

51. Plaintiff incorporates by reference paragraphs 1. through 50. above and realleges the same as if fully stated herein.

52. Under the Plan applicable to ERISA, Plaintiff deserves to recover from Mass. Mutual "a reasonable attorney's fee and costs of action" herein, pursuant to section 502(g)(1) of ERISA under 29 U.S.C. § 1132(g)(1).

53. Defendants have the ability to satisfy any award.

54. Plaintiff's conduct of this action is in the interests of all participants suffering from disabilities who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

55. The award of attorney's fees against Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

### (All Counts)

WHEREFORE, the Plaintiff respectfully prays that the Court:

1. Declare, adjudge, and decree that Defendants, or either of them, are obligated to pay Plaintiff for ongoing long-term disability benefits from February 1, 2001, to the present and continuing as calculated under the terms of the Plan;

2. Order that the Defendants, or either of them, make restitution to Plaintiff in the amount of any losses sustained by the Plaintiff in consequence of the wrongful conduct alleged in this Complaint, together with prejudgment interest;

3. Award Plaintiff the costs of this action and reasonable attorneys' fees; and

4. Award such other relief as may be just and proper.

Dated January 22, 2004.

                            THE PLAINTIFF, Christine Ruark

By: _____
     ROBERT L. DAMBROV, ESQ.
     BBO #113160
     Cooley, Shrair P.C.
     1380 Main Street
     Springfield, MA 01103
     Telephone (413) 781-0750
     Facsimile (413) 733-3042